*U.S. ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*

# United States Court of Appeals
# For the Second Circuit

August Term 2021

Argued: May 3, 2022
Decided: October 16, 2023

No. 21-1534

UNITED STATES OF AMERICA EX REL. MICHAEL QUARTARARO,
STATE OF NEW YORK EX REL. MICHAEL QUARTARARO,

*Plaintiffs-Appellees*,

*v.*

CATHOLIC HEALTH SYSTEM OF LONG ISLAND INC., DBA CATHOLIC HEALTH
SERVICES OF LONG ISLAND, ST. CATHERINE OF SIENA MEDICAL CENTER,

*Defendants-Appellants*,

ST. CATHERINE OF SIENA NURSING HOME, GOOD SAMARITAN HOSPITAL
MEDICAL CENTER, GOOD SAMARITAN NURSING HOME,

*Defendants*.[*]

Appeal from the United States District Court
for the Eastern District of New York
No. 12-cv-4425, Margo K. Brodie, *Chief Judge*.

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Before: CALABRESI, CABRANES, and SULLIVAN, *Circuit Judges*.

Catholic Health System of Long Island ("CHS") brings this interlocutory appeal challenging the denial of its motion to dismiss a *qui tam* action brought by a former employee, Michael Quartararo ("Relator"), on behalf of the United States and the State of New York under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 187 *et seq.* According to Relator, CHS and certain of its affiliates falsely certified their compliance with federal law, in violation of the FCA and NYFCA, when they submitted Medicare and Medicaid reimbursement claims without disclosing their ongoing violations of 42 U.S.C. § 1320a-7b(a)(4) (the "Benefits Conversion Statute"). After the Department of Justice and the New York Attorney General declined to intervene in the suit, the district court (Brodie, *C.J.*) denied CHS's motion to dismiss these claims but granted its motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the grounds that the case presented an issue of first impression in this Circuit. Because we now hold that the Benefits Conversion Statute is not violated where, as here, the recipient of a reimbursement payment is under no obligation to utilize the funds in any particular way, Relator has failed to plead an FCA or NYFCA claim. Accordingly, we **REVERSE** the orders of the district court and **REMAND** with instructions to dismiss Relator's section 1320a-7b(a)(4)-based claims.

REVERSED AND REMANDED.

THOMAS S. D'ANTONIO (Tony R. Sears, *on the brief*), Ward Greenberg Heller & Reidy LLP, Rochester, NY, *for Defendants-Appellants*.

DANIEL J. KAISER, Kaiser Saurborn & Mair, P.C., New York, NY, *for Plaintiffs-Appellees*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Catholic Health System of Long Island ("CHS") brings this interlocutory

appeal challenging the denial of its motion to dismiss a *qui tam* action brought by

a former employee, Michael Quartararo ("Relator"), on behalf of the United States and the State of New York under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 187 *et seq.* According to Relator, CHS and certain of its affiliates falsely certified their compliance with federal law, in violation of the FCA and NYFCA, when they submitted Medicare and Medicaid reimbursement claims without disclosing their ongoing violations of 42 U.S.C. § 1320a-7b(a)(4) (the "Benefits Conversion Statute"). After the Department of Justice and the New York Attorney General declined to intervene in the suit, the district court (Brodie, *C.J.*) denied CHS's motion to dismiss these claims but granted its motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the grounds that the case presented an issue of first impression in this Circuit. Because we now hold that the Benefits Conversion Statute is not violated where, as here, the recipient of a reimbursement payment is under no obligation to utilize the funds in any particular way, Relator has failed to plead an FCA or NYFCA claim. Accordingly, we reverse the orders of the district court and remand with instructions to dismiss Relator's section 1320a-7b(a)(4)-based claims.

## I. BACKGROUND

The United States subsidizes health care for certain individuals through two programs: Medicare and Medicaid. Medicare is a national program for the elderly and disabled that the federal government funds and administers. Medicaid, meanwhile, is a network of statewide programs, funded by both the federal government and the states, that helps cover medical costs for people with limited income. Like many health insurance programs, Medicare and Medicaid allow health care providers to seek reimbursement for services they provide to covered individuals.

CHS is the parent corporation of an integrated network of hospitals, nursing homes, and other medical facilities. As relevant here, CHS owns and operates the St. Catherine of Siena Medical Center (the "Medical Center") and the St. Catherine of Siena Nursing Home (the "Nursing Home" and, together with CHS and the Medical Center, "Defendants"). For services provided to Medicare and Medicaid patients, the Nursing Home is reimbursed by the government per diem, meaning it receives a fixed amount for each day a covered patient spends in the facility.

After working at the Nursing Home for thirty-eight years, Relator was fired in 2012. As relevant here, during his tenure, Relator discovered what he describes

as a "fraudulent scheme" by Defendants to divert Medicare and Medicaid funds – reimbursement payments the Nursing Home had received – from the Nursing Home to CHS and the Medical Center.  J. App'x at 137.  To divert the funds, CHS and the Medical Center allegedly charged the Nursing Home for "certain utility expenses, payroll expenses[,] and other ancillary medical and laboratory services that either were not incurred at all or that were grossly inflated."  *Id.* at 137–38.  Every year, these charges allegedly drained the Nursing Home of "hundreds of thousands of dollars . . . that should have been applied to the care of nursing home residents."  *Id.* at 172.  Some of the misappropriated funds included monies from a one-time $4.5 million "remediation payment" that the Nursing Home received from the New York State Department of Health to offset a retroactive reduction of its reimbursement rate.  *Id.* at 163–64.

Relator decided to challenge this alleged misconduct by bringing a *qui tam* action against CHS, the Nursing Home, and the Medical Center under the FCA and NYFCA.  These laws authorize individuals to sue, on the government's behalf, to recover property or money from individuals who have defrauded the government.  *See* 31 U.S.C. § 3730(b); N.Y. State Fin. Law § 190(2).  If successful,

relators are entitled to receive a share of the proceeds, as set by a court within a statutory range. *See* 31 U.S.C. § 3730(d); N.Y. State Fin. Law § 190(6).

According to Relator, the Nursing Home's Medicare and Medicaid reimbursement claims were fraudulent because they falsely certified compliance with federal law at a time when CHS and the Medical Center were unlawfully diverting Medicare and Medicaid reimbursement payments away from the Nursing Home residents. This misappropriation of government funds, Relator alleges, violated 42 U.S.C. § 1320a-7b(a)(4), a part of the Social Security Act ("SSA") that imposes criminal penalties on anyone who, "having made application to receive [a federal health care program] benefit or payment for the use and benefit of another and having received it, knowingly and willfully converts such benefit or payment or any part thereof to a use other than for the use and benefit of such other person." 42 U.S.C. § 1320a-7b(a)(4). In addition, Relator alleges that his firing was an act of retaliation in violation of the federal FCA and NYFCA.

After the Department of Justice and the New York Attorney General declined to intervene in the suit, Defendants moved to dismiss the complaint and for partial summary judgment. The district court thereafter dismissed all of Relator's claims but granted Relator leave to replead his misappropriation claims

discussed above. According to the district court, Relator's misappropriation theory was viable, but the allegations in the complaint were incomplete because Relator failed to allege that Defendants had actually submitted any reimbursement requests during the course of the alleged scheme. With leave of court, Relator amended his complaint to include allegations that the Nursing Home had made the requisite reimbursement requests during the relevant period. After the complaint was amended, Defendants renewed their motion to dismiss and for partial summary judgment, which the district court denied. Defendants then moved for the district court to reconsider its decision. Upon reconsideration, the district court held that "Relator ha[d] articulated a viable implied-false-certification argument based on his allegations that Defendants [had] violated section 1320a-7b(a) during a time they were submitting false Medicaid and Medicare reimbursement claims." Sp. App'x at 36. Defendants then moved for leave to file an interlocutory appeal under 28 U.S.C. § 1292(b), which the district court granted, finding that the issue of whether section 1320a-7b(a)(4) may serve as a basis for Relator's misappropriation claims is a novel question of law in the Second Circuit. This appeal followed.

## II. STANDARD OF REVIEW

The issue on appeal – whether section 1320a-7b(a)(4) criminalizes the conduct alleged in Relator's misappropriation claims – is a legal question that we review *de novo*. *United States v. Williams*, 733 F.3d 448, 452 (2d Cir. 2013). If Defendants are correct that section 1320a-7b(a)(4) does not apply to reimbursements of the sort at issue here, then Relator's claims fail as a matter of law and must be dismissed. Fed. R. Civ. P. 12(b)(6).

## III. DISCUSSION

The FCA imposes civil liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). The FCA recognizes two types of false claims: factually false claims and legally false claims. *See Mikes v. Straus*, 274 F.3d 687, 696–97 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016). A claim is factually false when it includes an "incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Straus*, 274 F.3d at 697. A claim is legally false when it falsely certifies – expressly or impliedly – compliance

with a governing statutory, regulatory, or contractual provision. *See Escobar*, 579 U.S. at 190.

Relator alleges that the Medicare and Medicaid reimbursement claim forms submitted by CHS are legally false because they failed to disclose CHS's ongoing violations of the Benefits Conversion Statute. According to Relator, Defendants violated the Benefits Conversion Statute when they misappropriated the Nursing Home's Medicare and Medicaid reimbursement payments by using those funds to pay CHS and the Medical Center for "utility expenses, payroll expenses[,] and other ancillary medical and laboratory services that either were not incurred at all or that were grossly inflated." J. App'x at 137–38. In essence, Relator insists that the Nursing Home falsely certified compliance with federal law, in violation of the FCA and NYFCA, every time it applied for Medicare or Medicaid reimbursement.

As a threshold matter, we note that Relator's claims rest solely on Defendants' alleged violation of the Benefits Conversion Statute. Relator has alleged no other violations of the SSA – or any other statute – as the basis for his false-certification claims.

Relator's asserted interpretation of the Benefits Conversion Statute is an issue of first impression in this Circuit – and apparently in every circuit. In fact,

other than the district court below, we have found no decision – in federal or state court – passing upon the meaning of the statute. In interpreting the Benefits Conversion Statute, we begin, as always, with the statute's text. Under the Benefits Conversion Statute, criminal penalties attach only if a person, "having made application to receive [a federal health care program] benefit or payment for the use and benefit of another and having received it, knowingly and willfully converts such benefit or payment or any part thereof to a use other than for the use and benefit of such person." 42 U.S.C. § 1320a-7b(a)(4). By its plain terms, the Benefits Conversion Statute is violated only if three conditions are met: (1) a person applies to receive a benefit or payment for "the use and benefit of *another*"; (2) the applicant receives such benefit or payment; and (3) after receiving such benefit or payment, the applicant knowingly and willfully converts the benefit or payment to a use other than for such other person. *Id.* (emphasis added). In other words, if the government makes a payment that is not "for the use and benefit of another" – i.e., a payment for the use and benefit of the payee -- the statute does not apply.

The conduct at issue here could not have violated the Benefits Conversion Statute. Simply put, the Medicare and Medicaid payments reimbursed the

10

Nursing Home for *past* services already rendered, without any requirement that the funds be used to confer a *future* benefit upon any person. Accordingly, the funds were not "for the use and benefit of another," and the Benefits Conversion Statute is inapplicable. 42 U.S.C. § 1320a-7b(a)(4).

There is no question that the Medicare and Medicaid reimbursement payments were for past services already rendered. During the period in question, the Nursing Home was reimbursed a fixed dollar amount for each day of care that it provided to a Medicare or Medicaid patient. To apply for reimbursement, the Nursing Home periodically completed after-the-fact claim forms that detailed the benefits it had conferred over a prior period: for Medicare, the prior month; for Medicaid, the prior week. After receiving a claim form, the government would reimburse the Nursing Home for the services it had provided. The reimbursement payment ended the life cycle of the claim. Having already provided the required services, the Nursing Home had no obligation to spend the reimbursement funds in any particular way.

Furthermore, the reimbursement claim forms imposed no forward-looking conditions as to how the Nursing Home had to use the funds. On each claim form, the Nursing Home had to certify that the information it submitted, all of which

concerned services already provided, was accurate. The Nursing Home did not –

and was not required to – certify that it would earmark the funds for a particular

person or type of service, or even retain the funds for the Nursing Home at all.

The same is true for the remediation payment, which Relator concedes was

retroactive. J. App'x at 163–64. The remediation payment was not earmarked for

future services – in fact, it was not for *any* services. As Relator describes it, the

remediation payment was a payment to the Nursing Home to mitigate the

retroactive reduction in 2011 of the Nursing Home's per diem reimbursement rate

for Medicaid claims submitted over the previous three years. *Id.* at 163. In no

sense, then, was it a "payment for the use and benefit of another." 42 U.S.C.

§ 1320a-7b(a)(4).

Relator nevertheless argues that the Nursing Home had an obligation to use

the Medicare and Medicaid reimbursement and remediation funds to provide

additional services to the same or similar residents of the Nursing Home. J. App'x

at 181. To be sure, the Nursing Home, like all residential health care facilities, has

a general obligation to provide adequate care for its residents. *See* N.Y. Comp.

Codes R. & Regs. tit. 10, § 415.1 *et seq.* But this general obligation does not create

a requirement to use Medicare and Medicaid reimbursement payments in any

particular way.  Relator points to no statutory or regulatory provision requiring the Nursing Home to use its Medicare and Medicaid payments only "for the care of the beneficiaries in whose names and on whose behalf the funding was . . . obtained."  J. App'x at 181.

Relator's reliance on this Court's holding in *United States v. Wright* is wholly misplaced.  160 F.3d 905 (2d Cir. 1998).  In *Wright*, we upheld enhancements under the Sentencing Guidelines for abuse of trust and vulnerable victims where the defendant embezzled money from a nursing home that received Medicaid funding.  *Id.* at 911.  In his brief, Relator plucks a line from *Wright* – that the Medicaid funds were "entrusted" to the defendant for the "well-being of the intended beneficiaries" – to argue that *Wright* established a rule that Medicare and Medicaid reimbursement dollars must be used for the benefit of a facility's residents.  Relator Br. at 4 (quoting *Wright*, 160 F.3d at 911).  But aside from the fact that *Wright* involved an application of the Sentencing Guidelines to a defendant who was not even charged with a violation of section 1320a-7b(a)(4), there is another fundamental difference between the two cases:  In *Wright*, the defendant failed to provide the mentally disabled residents in her facility with "any semblance of adequate care," wholly depriving them of the services for which the

13

federal funds were provided.  *Id.* at 910.  Here, by contrast, the Nursing Home's residents unquestionably received the benefits for which the Nursing Home was subsequently reimbursed.  In short, *Wright* said nothing about how reimbursement dollars must be spent when a benefit has already been conferred. We thus reject the argument that *Wright* has any relevance whatsoever to this case or the Benefits Conversion Statute.

Finally, Relator repeatedly alleges that CHS and the Medical Center overcharged the Nursing Home in order to strip assets from it and make them available for CHS's use.  But Relator's allegations of overcharging have nothing to do with the Benefits Conversion Statute, which simply does not apply when, as here, the payments were not "for the use and benefit of another."  42 U.S.C. § 1320a-7b(a)(4).  While overcharging may be covered by other statutes, the Benefits Conversion Statute is the only provision on which Realtor has based his FCA and NYFCA claims.  His overcharging allegations are thus irrelevant and need not be entertained.

In sum, because the Medicare and Medicaid payments at issue here were reimbursements for services already provided, with no forward-looking conditions that they be used in any particular way, Defendants' alleged conduct

did not violate the Benefits Conversion Statute. Relator's claims based on section 1320a-7b(a)(4) therefore fail as a matter of law.

## IV. CONCLUSION

For these reasons, we **REVERSE** the orders of the district court and **REMAND** the case with instructions to dismiss Relator's section 1320a-7b(a)(4)-based claims against Defendants.